UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH SHOAFF,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>　　　　　Defendant. | CASE NO. ED CV 04-826-PJW<br><br>MEMORANDUM OPINION AND ORDER |

I.

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of the decision by Defendant Social Security Administration ("Agency") denying Disability Insurance Benefits ("DIB"). Alternatively, he asks the Court to remand the case to the Agency for further proceedings. For the reasons discussed below, the Agency's decision is AFFIRMED and the case is DISMISSED WITH PREJUDICE.

## II.

## BACKGROUND

Plaintiff was born on October 6, 1942, and was 61 years old at the time of the last administrative hearing. (AR 14, 19, 42, 112.) In addition to a high school diploma, he has an Associate's Degree in Accounting. (AR 14, 51, 126.) Plaintiff has relevant work experience as a cabinet-maker, materials manager, and purchasing agent. (*See* AR 14, 121.)

After being denied benefits in 1998, Plaintiff filed for DIB on June 18, 2002, alleging disability since December 31, 1999.[1] (AR 112.) He claimed disability based on chest pain, high blood pressure, vision problems, low back pain and arthritis of the lower back, prostate gland dysfunction, and the residual effects of a stroke. (*See* AR 97.)

The Agency denied Plaintiff's disability claim on January 17, 2003. (*See* AR 97-100.) The Agency stated its reasons:

> The medical evidence shows that you have been treated for multiple impairments including high blood pressure, stroke, and degenerative joint disease. You have also been depressed. We need current medical evidence about your conditions and asked you to go to two evaluations at no cost to you with MDSI Physician Group on 12-29-02 and Dr. Nick Andonov on 11-19-02. You did not keep either of these

---

[1] Plaintiff had filed a previous application for DIB on March 22, 1997; following a hearing, that application was denied on May 28, 1998. (*See* AR 33-41.) On July 22, 1998, Plaintiff timely requested that the Appeals Council review the decision (*see* AR 44); this request was denied on December 29, 1999, and Plaintiff did not pursue that application further. (*See* AR 12, 86-66).

```
        appointment[s] so they were rescheduled for you.  We tried
        contacting you by phone but you never returned our calls.
        We also contacted your daughter and asked her to assist you
        in keeping the rescheduled appointments.  You failed to keep
        the second appointments.  Therefore, we do not have
        sufficient medical evidence about your condition and cannot
        make a determination on whether or not you are disabled.
        Your claim is denied due to failure to cooperate.
```
(AR 97.) Following the denial of his claim, Plaintiff timely requested a hearing before an administrative law judge ("ALJ"), which was granted.[2] (AR 102.) The ALJ conducted a hearing on January 7, 2004. (*See* AR 19-29.) Plaintiff appeared with his attorney and testified. (AR 19-20.) No other witnesses testified.

As to his physical impairments, Plaintiff claimed that he was "always" in pain, and stated that he experienced pain in his head, neck, left shoulder, right hand, lower back, left hip, and left leg. (*See* AR 22.) He stated that he had been hospitalized for chest pain in 2002 or 2003. (AR 26.) Plaintiff explained that the pain in his right hand was attributable to the amputation of his index and middle fingers, which were severed in an accident while he was making cabinets in the 1980s. (*See* AR 23-24.) He also claimed to experience some double-vision when looking out of one eye, and stated that he had

---

[2] In his Request for Hearing, Plaintiff explained that he had been "out of the country" when the appointments were scheduled. (*See* AR 102.) Although Plaintiff did not elaborate on or substantiate this assertion, the record reflects that--at the time his first application was denied in May 1998--Plaintiff was a frequent traveler to and from the Philippines, where he was then looking for a wife. (*See* AR 38, 53-54, 60-64.) After his benefits were denied, Plaintiff told the Agency that he intended "to return to the Philippines in the very near future." (AR 46.)

a speech impediment. (*See* AR 23-24.)  Additionally, Plaintiff testified that he suffered from chronic fatigue, and claimed that his pain interfered with his ability to concentrate. (AR 25.)

Despite his impairments, Plaintiff testified that he spent approximately one year looking for a job in 2002 or 2003. (*See* AR 25.)  He added that he had a driver's license and could drive a "short distance only," but stated that he did not own an automobile and could not use the bus. (AR 25, 28.)  He explained that he lived in a house with his daughter, his son-in-law, and two grandchildren; he watched television, went for walks, and did yard work. (AR 26-27.)  The ALJ then adjourned the hearing. (*See* AR 29.)

On January 30, 2004, the ALJ issued his decision. (*See* AR 12-17.)  Preliminarily, the ALJ noted that the decision denying benefits of May 28, 1998, was *res judicata*, and declined to re-open it. (*See* AR 13.)  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity between December 31, 1999--the date he allegedly became disabled--and December 1, 2001, the date his DIB coverage ran out. (*See* AR 14, 16.)  At step two, however, the ALJ concluded--as had the previous ALJ in 1998--that the evidence of record did not establish any severe impairment. (*See* AR 16; *see also* AR 40.)  On that basis, the ALJ found that Plaintiff was not disabled.[3] (AR 17.)

---

[3] Although the ALJ's denial of benefits at step two obviated the need to proceed to step three and beyond, the ALJ noted in passing that Plaintiff's claim would fail at step four, stating: "there is no credibly established reason that [Plaintiff] cannot return to his past relevant work as a materials manager and purchasing agent, which was basically sedentary." (AR 16.)

1    Plaintiff timely sought review of the ALJ's decision.  (AR 7.)
2 On May 12, 2004, the Appeals Council denied Plaintiff's Request for
3 Review, and the decision of the ALJ became the final decision of the
4 Agency.  (*See* AR 4-6.)  On July 13, 2004, Plaintiff filed his
5 Complaint in this Court.  On April 4, 2005, the parties filed a Joint
6 Stipulation ("Joint Stip.") setting forth the contested issues.

## II.

## STANDARD OF REVIEW

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).)  It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

"The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Indeed, if the record evidence reasonably can

5

support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the ALJ committed error but the error was harmless, reversal is not required. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003)(applying the harmless error standard).

IV.

DISCUSSION

Plaintiff advances two distinct challenges to the decision. First, Plaintiff disagrees with the ALJ's step-two conclusion that his low back pain was not a "severe" impairment. (*See* Joint Stip. at 3-5.) Second, Plaintiff complains that the ALJ erred when he rejected an unidentified medical professional's November 2003 opinion that he was permanently disabled. (*See* Joint Stip. at 7-8.)

Upon reviewing the record, the Court concludes that the ALJ's ultimate finding at step two that Plaintiff's low back pain did not amount to a "severe" impairment is supported by substantial evidence. Additionally, the Court finds that the ALJ properly rejected the anonymous opinion of disability, which may not have even been the opinion of a treating physician and which was, in any event, unsupported by any objective clinical or diagnostic evidence.

A. <u>Substantial Evidence Supports The ALJ's Finding That Plaintiff's Back Impairment Was Not "Severe"</u>

Plaintiff maintains that insufficient evidence supported the ALJ's determination that his back pain was not a "severe" impairment within the meaning of the regulations. (*See* Joint Stip. at 3-5.) After reviewing the record, the Court concludes that the ALJ's finding of non-severity is supported by substantial evidence.

1     Under the applicable regulation, "[a]n impairment or combination
2 of impairments is not severe if it does not significantly limit [the
3 claimant's] physical or mental ability to do basic work activities."
4 *See* 20 C.F.R. § 416.921.  An impairment should be found to be "non-
5 severe" only when the evidence establishes merely a slight
6 abnormality, with no more than a minimal effect on the claimant's
7 ability to work.  *See Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir.
8 1994); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)
9 (citing SSR 85-28).  Additionally:

10     [W]here the requisite relationship between the medically
11        determinable impairment(s) and the alleged symptom(s) is
12        established, the intensity, persistence, and limiting
13        effects of the symptom(s) must be considered along with the
14        objective medical and other evidence in determining whether
15        the impairment or combination of impairments is severe.
16 *See* SSR 96-3p.  "Great care should be exercised in applying the not
17 severe impairment concept" at step two of the sequential process.  *See*
18 S.S.R. 85-28.  Be that as it may, however, Plaintiff must shoulder the
19 ultimate burden of proving that he is disabled.  *See Mayes v.*
20 *Massanari*, 276 F.2d 453, 459 (9th Cir. 2001).

21     Ordinarily, the foregoing summary of the relevant law would
22 supply ample context for this Court's review of the ALJ's step-two
23 finding of non-severity.  In this case, however, it bears emphasis
24 that a DIB claimant "shall not be considered to be under a disability
25 unless he furnishes such medical and other evidence of the existence
26 thereof as the [Agency] may require."  *See* 42 U.S.C. § 423(5)(A).
27 This imposes on the DIB claimant the duty to "submit to evaluation" by
28 Agency physicians, as warranted.  *See Robbins v. Barnhart*, 205

F.Supp.2d 1189, 1198 (D. Kan. 2002).  The claimant's duty to submit to medical examination is important because the opinion of an examining physician can, all by itself, constitute substantial evidence to support a decision.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Accordingly, the regulations forewarn claimants that they may be denied benefits if they deprive the Agency of this evidence by failing to keep their scheduled appointments with examining physicians.  *See* 20 C.F.R. § 404.1518(a)("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind.").

    In this case, Plaintiff's failure to cooperate with the Agency's attempts to have him examined by physicians directly led to the ALJ's conclusion that he had not established a "severe" impairment.  After summarizing the medical evidence post-dating the Agency's previous denial of benefits, (*see* AR 14-16), the ALJ concluded that the information *missing* from the nearly 300-page medical record made the denial of benefits a foregone conclusion:

> Despite due process notice by mail and telephone, [Plaintiff] has repeatedly failed to attend his scheduled examinations.  I cannot find, based on the present record, that objective medical evidence[,] either clinical or diagnostic[,] establishes the existence of any severe physical or mental impairment.

(AR 16.)  For this basic reason, the ALJ found that Plaintiff was not disabled at step two.  (*See* AR 16-17.)

1    The record fully supports the ALJ's finding that Plaintiff was
2 uncooperative, and he does not argue otherwise.  The Agency had
3 scheduled appointments with two examining physicians; when Plaintiff
4 failed to appear for those appointments, the Agency rescheduled them;
5 when Plaintiff missed these rescheduled appointments, the Agency
6 called him, spoke to his adult daughter (with whom he lived and who he
7 had identified as a person who could help him with his claim), and
8 sent letters to his home address.  (*See* AR 97, 119, 360.)  When
9 Plaintiff did not return the Agency's calls and did not acknowledge
10 the letters, his benefits were denied.  (*See* AR 97.)  Nor did
11 Plaintiff offer a good reason for missing these appointments.  Only
12 after the Agency denied DIB did Plaintiff offer a reason for his
13 failure to keep his appointments, claiming to have been "out of the
14 country."  (*See* AR 102.)  This explanation was not a "good reason"
15 within the meaning of the regulations,[4] and it gave the ALJ no reason
16 to believe that Plaintiff's alleged mental impairments were causing
17 him to be uncooperative.[5]  Given that Plaintiff was represented by an

---

[4] The regulations provide that, if a claimant has a "good reason" for missing his appointment, the Agency "will schedule another examination."  *See* 20 C.F.R. § 416.918(a).  "Good reasons" for failing to appear include (1) illness on the date of the scheduled examination or test; (2) not receiving timely notice of the scheduled examination or test, or receiving no notice at all; (3) being furnished incorrect or incomplete information, or being given incorrect information about the physician involved or the time or place of the examination or test; or (4) having had a death or serious illness occur in the claimant's immediate family.  *See* 20 C.F.R. § 416.918(b).  Insofar as the range of acceptable reasons for failing to keep appointments covers circumstances beyond the claimant's control, absenting oneself from the country is not a "good reason" within the meaning of the regulations.

[5] *Cf. Kreidler v. Barnhart*, 385 F.Supp.2d 1034, 1037 (C.D. Cal. 2005)(affirming an ALJ's discontinuation of benefits because the claimant repeatedly failed to attend physical and psychiatric

experienced member of this bar,[6] and given that his attorney did not ask the ALJ to schedule a third set of appointments or to hold the record open at the end of the hearing,[7] (*See* AR 21, 28-29), the regulations permitted the ALJ to render a decision based on the evidence at hand.  *See* 20 C.F.R. § 404.1527(c)(4)(noting that, "when[,] despite efforts to obtain additional evidence the evidence is not complete, we will make a determination or decision based on the evidence we have").

A fair reading of the medical information that the record *does* contain confirms that substantial evidence supports the ALJ's step-two finding.  The only "severe" impairment that Plaintiff claims the ALJ overlooked is "objective evidence showing severe degenerative joint disease at L5-S1."[8]  (*See* Joint Stip. at 4.)  A single x-ray, taken on

---

examinations, noting that "absolutely nothing in the record suggests plaintiff's failure to cooperate was due to her mental impairment").

[6] *Cf. Barnave v. Barnhart*, No. 04CV2910JG, 2005 WL 1129780, at **9-10 (E.D.N.Y. May 13, 2005)(reversing where the ALJ denied benefits because a mentally-impaired *pro per* claimant had refused to attend a psychiatric examination and instructing the Agency to appoint counsel on remand, explaining: "Counsel will recognize, even if [the claimant] does not, that if [the claimant] continues to be uncooperative with the Commissioner's attempts to gather evidence with respect to a mental impairment, the ALJ may properly deny the claim for benefits on remand").

[7] Although Plaintiff asked the Agency to reschedule his appointments in his February 2003 Request for Hearing, (*see* AR 102), the fact that his DIB claim required evidentiary development of his limitations as they existed between December 31, 1999 and December 1, 2001 meant that, the longer he delayed examination by Agency physicians, the less probative their conclusions would be.  (*See* AR 14.)

[8] Under the regulations, a claimant's burden of proof at step two can be met by a showing that he has an "impairment *or combination of impairments* which significantly limits [his] physical or mental ability to do basic work activities."  *See* 20 C.F.R. § 404.1520(c) (emphasis added).  Plaintiff does *not* argue that the ALJ erroneously

September 28, 1999, led Dr. Thuan Dang, M.D., to opine that Plaintiff suffered from "severe degenerative disease at L5-S1." (*See* AR 216.) On October 18, 1999, however, a follow-up nerve conduction test of the lumbro-sacral area led Dr. Nguyen N. Thong, M.D., to conclude that Plaintiff only suffered from "mild left S1 radiculopathy." (*See* AR 217-18.) Consistent with the latter diagnosis, Plaintiff began taking Robaxin in early 2002, but underwent no other treatment for back pain.[9] (*See* AR 125, 183.) Within months, Plaintiff was no longer complaining of low back pain to his doctors, (*see* AR 291-92), and he never claimed that Robaxin produced unpleasant side-effects.[10] Nor did any doctor ever opine that the September 1999 x-ray report translated into functional limitations. This omission is critical because the applicable regulations state that "[a]n impairment or combination of impairments is not severe if it does not significantly

---

found that his "combination of impairments" was non-severe. (*See* Joint Stip. at 3-5.) Accordingly, the Court's focus is limited to the narrow issue that Plaintiff does raise: whether his low back impairment was severe in and of itself during the relevant period.

[9] Even if Plaintiff had begun taking this medication during the relevant period--which he evidently did not--this conservative treatment further supports a finding of non-severity. *See Barfield v. Barnhart*, 285 F.Supp.2d 827, 835 (S.D. Tex. 2002)(finding that conservative treatment for a claimant's back pain supported a finding of non-severity at step two); *see also Bourbon v. Barnhart*, No. C 00-4712 MMC, 2002 WL 31855298, at *8 (N.D. Cal. Dec. 13, 2002)(noting with approval an ALJ's finding that the "lack of aggressive treatment" was evidence that the claimant's impairment was "not of a severe and debilitating nature").

[10] To the contrary, Plaintiff actually told doctors that Robaxin had the *beneficial* side effect of alleviating his headaches, in addition to his back pain. (*See* AR 183).

limit [a claimant's] physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1521(a); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

Faced with a claimant who repeatedly failed to appear for his scheduled appointments with consultative examiners, the ALJ rendered a decision based on the available evidence. (*See* AR 16.) The regulations permitted him to do so. *See* 20 C.F.R. § 404.1527(c)(4). The lone x-ray report showing "severe" degenerative disc disease in September 1999--particularly when viewed in light of the nerve conduction study that showed only "mild radiculopathy" three weeks later--does no more than create a *conflict* in the evidence regarding the severity of Plaintiff's back impairment. The resolution of such a conflict was precisely the point of the consultative examinations that Plaintiff skipped. *See* 20 C.F.R. § 404.1519a(a)(2)(noting that the Agency "will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists"). "Where, as here, the record contains conflicting medical evidence, the ALJ is charged with [...] resolving the conflict." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). And where "there is evidence sufficient to support either outcome, we must affirm the decision actually made." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

B.  The ALJ's Rejection Of An Anonymous Medical Opinion Was Proper, And Does Not Warrant Reversal

Plaintiff's second and final criticism of the decision is based on the ALJ's rejection of a November 2003 medical report that Plaintiff claims was authored by a "treating physician," and which

12

contained the opinion that he is permanently disabled.  (*See* Joint Stip. at 8-9.)  The Court concludes that the ALJ's rejection of this report was appropriate.

A treating physician's opinion on the nature and severity of an impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(d)(2).  The ALJ must offer specific and legitimate reasons to reject the opinions of treating physicians. *See Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996)(same). Although the opinion of a treating physician should be given great deference, it "is not necessarily conclusive as to either the [claimant's] physical condition or the ultimate issue of disability." *Morgan*, 169 F.3d at 600.  The ALJ need not, for example, accept a treating physician's opinion that is brief, conclusory, and unsubstantiated by objective medical evidence.  *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

The document to which Plaintiff refers is a one-page "Medical Report" from the San Bernardino County Transitional Assistance Department.  (*See* Joint Stip. at 8 (citing AR 376).)  In the space provided for a "Diagnosis and Prognosis," the author of the report listed "hypertensive CVD," "carotid artery disease & syncope," "multi-cystic renal disease," and "cervical disc disease."[11]  (AR 376).  The author then checked a box indicating that Plaintiff's incapacitation

---

[11] Notably, the author of the report did not list *lumbar* disc disease among Plaintiff's diagnoses.  (*See* AR 375.)

was "permanent," and checked a second box indicating that "no further tests" were needed to make this determination. (AR 376.) In the space the form provided for "comments," the author wrote the word "disabled," followed by another illegible word. (*See* AR 376.) The author's illegible signature appears above the line designated "Doctor or Authorized Staff Member Signature," and the form is dated November 20, 2003. (*See* AR 376.)

Notwithstanding the doubtful provenance of this document,[12] it is clear that the ALJ gave Plaintiff the benefit of the doubt and assumed that a treating physician authored it. (*See* AR 15.) After summarizing this document and its contents, however, the ALJ ultimately rejected its conclusions, explaining:

> I have considered and rejected the Welfare Medical Report dated November 20, 2003 which indicated that [Plaintiff] was disabled permanently. [....] This assessment is not worthy of significant probative weight. It is not accompanied by any objective evidence in support of the conclusions, does not indicate any restrictions, and is inconsistent with the evidence of record. Also, the conclusion that [Plaintiff]

---

[12] Although Plaintiff insists that a "treating physician" completed this form, (*see* Joint Stip. at 8-9), it is not at all clear that this is so. Again, the signature is illegible, and the form could be completed by any "authorized public health dept. medical professional" and signed by any "authorized staff member." (*See* AR 376.) This being so, and given the document's origin, a more likely conclusion is that a county employee reviewing Plaintiff's file rendered these conclusions. At most, then, the document would appear to be entitled to the same weight usually given the report of an Agency reviewing physician: *i.e.*, it could serve as substantial evidence only when supported by other evidence in the record and consistent with the evidence in the record overall. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

1    is disabled is simple [*sic*] unsupported and is on an issue
2    that is reserved for the Commissioner; therefore, [it] is
3    not of persuasive value.

(*See* AR 15.)  After reviewing the evidence, the Court concludes that--even if this assessment *did* originate from a treating physician--the ALJ gave it the weight it deserved.

Here, the ALJ correctly noted that this one-page check-the-box form was "not accompanied by any objective evidence in support of [its] conclusions." (AR 15.)  This was a legitimate reason to reject it.  *See Johnson*, 60 F.3d at 1432; *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)(explaining that the ALJ permissibly could reject three medical evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions").  The ALJ's observation that the ultimate opinion of disability was reserved for the Commissioner, (*see* AR 15), also was an accurate statement of the law.  *See Magallanes*, 881 F.2d at 751-752 (noting that the ultimate issue of disability is a legal determination reserved to the Commissioner).  Finally, a review of the record substantiates the ALJ's finding that the report was "inconsistent with the evidence."[13]  (*See* AR 15.)  Although this dissonance would not, by itself, warrant the outright rejection of a treating physician's

---

[13]  As late as August 27, 2002, Dr. Steven Fitzmorris, M.D., described Plaintiff's hypertension as "mild" and recommended no limitation of activity. (*See* AR 272.)  As of May 10, 2002, an MRI and carotid Doppler testing showed that Plaintiff's carotid vascular disease was "minor"; accordingly, his treating physician imposed no work-related or exertional restrictions of any kind. (*See* AR 283-84.)  Finally, nothing in the record substantiates the diagnosis of "cervical disc disease."  To the contrary, Plaintiff admitted having "no problem with his neck or back" as of the May 28, 1998 decision, (*see* AR 35-36), and the record shows that Plaintiff did not complain of neck pain during the relevant period. (*See* AR 292, 299, 304.)

opinion,[14] it reinforces the ALJ's decision that the opinion deserved no weight. *See* 20 C.F.R. § 404.1527(d)(2); *see also* § 404.1527(d)(4) ("the more consistent an opinion is with the record as a whole, the more weight [will be given] to that opinion").

In sum, Plaintiff has not shown that the single-page, anonymous "report" of November 20, 2003 established a severe impairment predating the expiration of his DIB eligibility on December 1, 2001. The ALJ's rejection of this report does not warrant reversal.

## IV.
## CONCLUSION

For the reasons set forth above, this Court finds that the Agency's findings were supported by substantial evidence and were free from material legal error. Accordingly, the Court AFFIRMS the decision of the Agency.

IT IS SO ORDERED.

DATED:    November  16 , 2005.


                                    /s/
                                PATRICK J. WALSH
                                UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\SHOAFF\Memo Opinion.wpd

---

[14] Even if a treating physician's medical opinion is inconsistent with other substantial evidence in the record, "[t]reating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 C.F.R. § 404.1527." *See* S.S.R. 96-2p. "Adjudicators must remember that a finding that a treating source medical opinion is ... inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected . . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *See id.* In this case, however, rejection of the anonymous opinion was appropriate because the unknown author provided "no support for her or his opinion on the matter." *See Holohan*, 246 F.3d at 1203 n.2.